MITCHELL *v.* SLOCUM.

(No. 79 CVF 8085—Decided
July 10, 1981.)

Akron Municipal Court.

*Ms. Frances W. Houk,* for plaintiff.
*Mr. James W. Slater,* for defendant.

SCHNEIDERMAN, J. This cause came on for trial on June 5, 1981, upon the complaint of the plaintiff, Virginia G. Mitchell, and the answer of the defendant, Joseph H. Slocum. The plaintiff sought recovery from the defendant of the $3,111.69 it paid to the city of Akron for closing of a sidewalk vault on the real estate located at 283 South Main Street, Akron, Ohio, which she purchased from the defendant. Plaintiff based her claim on fraud. In addition to the above amount, she claims attorney fees and punitive damages of $5,000 for a total of $8,111.69. Defendant denied these claims.

Statement of Facts

In early May 1976, defendant received a certified letter dated May 3, 1976, from the city of Akron, Department of Public Service, relative to his real estate at 283 South Main Street, hereinafter referred to as the "property." In that letter, the city notified defendant that the vault on the property was in need of repair and that unless he repaired or removed it, the city would do the necessary work. The letter further stated that the city would charge the owner for the work to be done and if he did not pay within thirty days, then the same would be certified to the county auditor and entered as a special assessment on the property.

The city's action was based on city of Akron Ordinance 1983.04 (m), which is as follows:

"The owner of a building having a vault under a sidewalk or a service chute in a sidewalk, as an adjunct to such building, or a tenant of such building who has the right to use such vault or chute, shall keep the vault and chute, including the tops and covers thereof, in good order and repair. If any vault or chute or top or cover thereof is in need of repair, it shall be repaired or removed and properly filled and paved over upon notice to do so from the Director of Public Service. In the event any person fails to comply with such notice, the Director is authorized to cause the repair or removal and proper filling and paving, and to cause all dangerous conditions to be remedied. The cost thereby incurred shall be paid out of the City treasury on the certificate of the Director and if such person within thirty (30) days after payment fails, neglects or refuses to repay the City, the expense incurred, the Director shall certify the expenses to the County Auditor of Summit County. The County Auditor shall enter the expenses on the tax duplicate of the County as a special assessment upon the real estate which the chute or vault served or' which was constructed, and the special assessment shall be collected as other taxes and assessments and refunded to the City."

Defendant, in a letter dated May 10, 1976, responded to the city's letter and asked for more information. Later, and before July 8, 1976, defendant either authorized or acquiesced in allowing the city to have the vault removed and filled in.

Defendant had the property for sale and on July 8, 1976, entered into a sales

agreement with plaintiff to sell it for the sum of $40,000.

Prior to the July 8 date, plaintiff visited the property on one occasion. The inspection lasted less than one-half hour. Plaintiff did go into the basement with defendant's real estate agent and was in the general vicinity where the vault was located. At the time, the basement was dimly lighted and the only natural light was at the rear, or opposite end of the basement. They were in the basement for only a few moments and the plaintiff did not see the vault. The vault was not pointed out to the plaintiff, and there was no conversation between the defendant's agent and the plaintiff relative to the vault.

Neither the real estate agent nor the plaintiff had any knowledge about the fact the city was working on the vault or contemplating such work; consequently, no conversation was ever had between them through the closing of the property sale. Sometime in July 1976, the city of Akron began work to remove the vault, fill it and replace the sidewalk. On July 29, 1976, the city sent a letter to the defendant in response to his telephone request that day to delay its work until a sale of the property was completed. The city denied that request and sometime in August 1976, its work on removal of the vault was complete, including the new walk.

In October 1976, the plaintiff obtained possession and then made her second visit to the premises. The October visit was with her contractor. Repairs and alterations were made to the storeroom thereafter.

A warranty deed dated August 13, 1976, from defendant to plaintiff, which had been in escrow, was delivered and recorded in favor of the plaintiff on December 29, 1976. The transaction for the sale of the property was completed on or about December 29, 1976.

The sales agreement between the parties contained the usual language, including that the real estate to be trans-
ferred was to be "free of all incumbrances except such as were to be assumed by the Buyer [plaintiff] or to be paid off and discharged at the time of the closing of the deal. All taxes, reassessments and assessments shall be prorated according to the calendar year as of the recording of deed." The deed warranted that the property was "free from all encumbrances excepting taxes and assessments due and payable after the delivery date of this instrument, all of which the Grantee herein [plaintiff] agrees to assume and pay."

By letter dated May 9, 1979, the city informed the defendant that $3,111.69 was due for the removal of the vault and that failure to pay within thirty days would result in a lien on the property. This letter was forwarded to the plaintiff.

The city's charges were received at its assessor's office a short time before its May 9, 1979 letter. It had no information of the same before that receipt and therefore no record of any special assessment. An inquiry at the department of public service in June or July 1976, could have disclosed the city's plans about the vault on the property. This information was contained in an office file and not as a public record. No legislative action was ever taken and none was necessary.

Plaintiff paid the city of Akron the requested sum of $3,111.69 before the end of May 1979.

Plaintiff's first knowledge of the existence of the vault and its removal came in May 1979.

## Decision

The issue in this case is whether or not the defendant, as the seller of real estate, had a duty to disclose to plaintiff the city of Akron's planned action to close the sidewalk vault, and the fact the city expected to recover that cost from the owner or a lien would result.

Although mere silence does not amount to fraud, there are situations when it becomes the duty of a person to speak in order that the party with whom

he is dealing may be placed on an equal footing with him. 24 Ohio Jurisprudence 2d 678, Fraud and Deceit, Section 76.

There is a distinction between mere silence and concealment. The suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. 37 Corpus Juris Secundum 244, Fraud, Section 16.

The simple failure to disclose a fact is not equivalent to its concealment, for a distinction is made between the concealment of a fact and the failure to disclose a fact, the former implies a purpose — design; the latter does not. 24 Ohio Jurisprudence 2d 678, Fraud and Deceit, Section 75. See *Klott* v. *Associates Real Estate* (1974), 41 Ohio App. 2d 118 [70 O.O.2d 129], at pages 121-122, which favorably refers to and discusses the above statements in Ohio Jurisprudence 2d.

Certainly there remains in Ohio the rule of "[c]aveat emptor * * * but fraud in the vendor constitutes an exception to the rule." *Crabbe* v. *Freeman* (M.C. 1959), 81 Ohio Law Abs. 65, paragraph three of the headnotes.

In an Ohio Supreme Court case, wherein the real estate broker was being sued for participation in a nondisclosure of a fact that constituted fraud, the court favorably discussed the principles involved herein. *Miles* v. *Perpetual S. & L. Co.* (1979), 58 Ohio St. 2d 97 [12 O.O.3d 108]. In that case, the court stated at pages 99-100 as follows:

"One of the interests protected by the law of deceit is 'the interest in formulating business judgments without being misled by others * * *' into making unwise decisions which result in financial loss. Fleming & Gray, Misrepresentation — Part I, 37 Maryland L. Rev. 286-287 (1977). It is well established that an action for fraud and deceit is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak. Prosser on Torts (4 Ed. 1971) 695-696, Representation and Nondisclosure, Section 106; 37 American Jurisprudence 2d 197-201, Fraud and Deceit, Sections 144 and 145; *Barder* v. *McClung* (1949), 93 Cal. App. 2d 692, 697, 209 P. 2d 808."

In *Gilbey* v. *Cooper* (1973), 37 Ohio Misc. 119 [66 O.O.2d 366], the court found that there was a duty on the vendor to disclose to the purchaser the fact that temporary and permanent easements were taken over the property to be sold. Nondisclosure was willful misrepresentation. The court so held despite the fact that the purchaser could have readily discovered this information. *Gilbey* is comparable to the case at bar; it was found therein that the sellers "owed a duty of complete disclosure of all facts in the sale of this house, about anything that could not be visibly seen." *Id.* at 122. It found that the defendants acted fraudulently in not making any disclosure about the easements to plaintiffs.

In the case of *Welsh* v. *Toni* (C.P. 1958), 82 Ohio Law Abs. 45, the court also found a duty on the part of the vendor of real estate to disclose knowledge of proposed assessments of the real estate on the grounds of equitable estoppel.

The Ninth District Court of Appeals in *Morber* v. *Zimmerman* (Oct. 1970), No. 6482, unreported, affirmed a similar case in which the Summit County Court of Common Pleas found fraudulent concealment by a seller. The unreported common pleas court decision was rendered June 1969, and was accompanied by a separate finding of law and facts. Judge Lombardi found that within a month prior to the buyer seeing the property the street had been paved. Before the visit, the city council approved a resolution of necessity and an ordinance to proceed with the paving. The buyer did not see the new paving and had no knowledge the special assessment was being levied against the property. The seller made no disclosure and the buyer purchased the property. The Sum-

mit County court found that the seller had the duty to disclose the impending assessment. The court found the seller "purposely and knowingly withheld disclosure * * * for fear it would kill the sale * * *."

In the instant case as in the above-cited case, it was more than just remaining silent, but a failure to disclose a material fact. In the *Morber* case, the city's action was a matter of public record before the sale and readily ascertainable; the city's action was not so available in the present case. In *Morber,* the assessment resulted in a benefit to the buyer, but this was not necessarily true in this case.

In the case at bar, before the sales agreement was signed, the defendant knew and the plaintiff did not know the following facts:

(1) That the. city of Akron wanted the vault repaired or filled or the city would do it;

(2) That defendant had authorized or acquiesced in having the city of Akron fill the vault;

(3) That the owner of the property would be charged for the work performed by the city of Akron; and

(4) That if the above charges were not paid an assessment would be levied against the property.

Under these circumstances the defendant had a duty to disclose the city's plans to fill the vault. Plaintiff had no actual knowledge of the filling of the vault until May 1979.

The conduct of the defendant from his receipt of the city's May 3, 1976 letter through the close of his sale to plaintiff leaves but one conclusion. This court finds that defendant deliberately concealed from the plaintiff the fact of the filling of the vault and the charges by the city, and that defendant's actions constituted fraud.

The defendant cites the cases of *Landy* v. *Waller* (App. 1962), 91 Ohio Law Abs. 417, and *Wells* v. *DuRoss* (1977), 54 Ohio App. 2d 50 [8 O.O.3d 56], in support of his position. *Landy* v. *Waller* dealt with a situation where the special assessment was only "probable." In the case before the court, work was certain to be done soon. The court does not accept the *dicta* in *Wells* v. *DuRoss, supra* (which suggests that purchasers are held to have constructive knowledge of pending assessment proceedings), to stand for the proposition that there can never be a fraudulent concealment of such proceedings. In that case, no fraud on the part of the vendors had been alleged.

The court finds that defendant is liable to the plaintiff in the amount of $3,111.69 for the sum she paid to the city of Akron for filling the vault. The court does not find any basis, however, for the awarding of punitive damages. Judgment will be entered in accordance with this opinion.

*Judgment accordingly.*