GAIER et al., Appellants,

v.

MIDWESTERN GROUP, Appellee.

[Cite as *Gaier v. Midwestern Group* (1991), 76 Ohio App.3d 334.]

Court of Appeals of Ohio,
Miami County.

No. 91–CA–20.

Decided Nov. 25, 1991.

*William H. Thornburgh,* for appellants.

*Robert N. Snyder,* for appellee.

F<small>AIN</small>, Presiding Judge.

Plaintiffs-appellants, J. Richard Gaier and William H. Thornburgh, appeal from a summary judgment rendered in favor of defendant-appellee, Midwestern Group. The sole issue in this appeal is whether Gaier and Thornburgh, as the attorneys for Patrick Garrett and his family, had the right to recover from Garrett's insurer, Midwestern Group, one third of the amount that Midwestern received from another insurance company in settlement of Midwestern's subrogation claim. Because there was no contractual relationship between Gaier and Thornburgh, on the one hand, and Midwestern, on the other, and because there was a failure of proof of at least one of the essential elements necessary to support a claim based on unjust enrichment or *quantum meruit,* we agree with the trial court that Midwestern was entitled to judgment as a matter of law. Accordingly, we affirm.

## I

Gaier and Thornburgh agreed to represent Garrett and his family in a lawsuit arising out of an automobile accident involving the Garretts' car and a car operated by Jerri Jackson. The Garretts agreed to pay Gaier and Thornburgh a contingency fee of 33⅓ percent of any settlement or judgment, after deducting for expenses of suit.

The Garretts were insured by Midwestern, and Jackson was insured by Westfield Companies. The Garretts' insurance policy with Midwestern included provisions for medical payments and for subrogation rights. Under the medical-payments provision, Midwestern paid $6,154 toward medical bills for the Garretts for injuries caused by the accident. After suit was filed and before trial, Gaier and Thornburgh negotiated a settlement of their clients' personal claims against Jackson for the sum of $114,250, which was paid by Westfield. From that settlement, Gaier and Thornburgh received attorney fees of $38,010.40. At the time of the settlement, Westfield also issued separate checks totalling $6,154 for Midwestern's subrogation claim. The record does not reflect the identity of the payees on these checks. We will assume that the checks were payable jointly to Midwestern and the Garretts and/or Gaier and Thornburgh.

Gaier and Thornburgh held the checks, claiming that they were entitled to one third of the amount as attorney fees. When Midwestern refused their claim to the fees, Gaier and Thornburgh filed a declaratory judgment action against Midwestern claiming that they were entitled to one third of the money as their contingency fee and also that they had been acting as agent for Midwestern, so that it was "only equitable" that Midwestern pay them the one-third fee.

Both parties filed motions for summary judgment. Gaier and Thornburgh alleged in their affidavit supporting their motion for summary judgment, but produced no other proof, that Midwestern "always" paid a one-third attorney fee on any recovery of a subrogation claim against a tortfeasor. Midwestern argued that there was no attorney-client relationship between Midwestern and Gaier and Thornburgh, and that Midwestern did its own work to protect its subrogation claim. The court granted summary judgment to Midwestern; Gaier and Thornburgh appeal.

## II

Gaier and Thornburgh's sole assignment of error is as follows:

"The trial court erred in granting summary judgment in favor of the defendant and in failing to grant summary judgment in favor of the plaintiffs."

Gaier and Thornburgh argue that the language in the insurance policy regarding subrogation rights is ambiguous and, therefore, should be construed against the insurer, who drafted it. That provision is as follows:

"OUR RECOVERY RIGHTS. In the event of any payment under this policy, we are entitled to all the rights of recovery that the person or organization to whom payment was made has against another. That person or organization must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.

"When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment."

Gaier and Thornburgh argue that the word "recovered" is not adequately defined as to "net" recovery or "gross" recovery and that equity requires Midwestern to pay a one-third attorney fee.

Gaier and Thornburgh do not claim that they had either an actual or an implied attorney-client relationship with Midwestern. Rather, they seem to be arguing that simply because they sued the tortfeasor and negotiated a settlement with the tortfeasor, for which they received substantial attorney fees, they also should be paid attorney fees for a separate settlement between the insurance companies on the subrogation claim for the medical payments. They apparently base this claim partly on the fact that the checks were made payable jointly to the Garretts and to Midwestern.

We do not find that the language in the insurance policy is ambiguous; nor do we find that there is any equitable reason to impose an obligation to pay attorney fees on Midwestern. The policy clearly states that "[w]hen a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment." The Garretts were paid $6,154 by Midwestern for medical payments and had a contractual obligation to reimburse to Midwestern $6,154 out of their recovery from Westfield. The obligation to reimburse Midwestern was to reimburse the entire amount of Midwestern's payment, regardless of the amount of the settlement or the cost of obtaining the settlement. The fact that Westfield's

having paid the subrogation claim separately had the effect of increasing the net recovery to the Garretts by $6,154, because they were not required to reimburse Midwestern out of the $114,250 settlement, does not lead to the conclusion that Midwestern should pay attorney fees to Gaier and Thornburgh. The transaction was a separate transaction that was not directly related to Gaier and Thornburgh's representation of the Garretts.

Furthermore, the complaint filed by Gaier and Thornburgh on behalf of the Garretts did not state a cause of action against Midwestern. There was no contractual relationship between the attorneys and Midwestern that would give rise to a cause of action by the attorneys against the insurer. There is also no evidence that the insurer was unjustly enriched by the transaction. Rather, Midwestern fulfilled its contractual obligation to make medical payments to the Garretts, and the reimbursement "to the extent of our payment" was an obligation owed by the Garretts pursuant to that same contractual provision.

Midwestern had a right to recover from Westfield which was separate and independent from the right of the Garretts to recover from Westfield. The record is clear that Midwestern notified Westfield of its subrogation claim prior to the settlement of the lawsuit; thus its right to subrogation was protected regardless of the settlement between the Garretts and Westfield. See, *e.g., Peterson v. Ohio Farmers Ins. Co.* (1963), 175 Ohio St. 34, 191 N.E.2d 157; *Wiswell v. Shelby Mut. Ins. Co.* (1986), 33 Ohio App.3d 297, 515 N.E.2d 1214; *Motorists Mut. Ins. Co. v. Gerson* (1960), 113 Ohio App. 321, 17 O.O.2d 333, 177 N.E.2d 790.

■ There was no contractual relationship between Gaier and Thornburgh, on the one hand, and Midwestern, on the other, whether arising expressly or by implication. Nevertheless, a recovery may sometimes be had for unjust enrichment, or *quantum meruit,* if one person, through his efforts, produces a benefit for another under circumstances in which it would be inequitable to permit the person benefited to retain the full value thereof without some compensation to the person producing the benefit.

In the case before us, Gaier and Thornburgh might argue that it would be inequitable for Midwestern to retain the full $6,154 paid to it by Westfield when it was Gaier and Thornburgh's efforts, representing the Garretts, that led to the establishment, by settlement, of the legal conclusion that Westfield's insured was liable for the accident. Westfield would presumably not have paid Midwestern until it was satisfied that its insured had liability for the accident.

This is only part of an unjust-enrichment analysis, however. A plaintiff seeking recovery under a theory of unjust enrichment must also establish that he has incurred a substantial detriment. It is the existence of a substantial detriment to the plaintiff, causally connected to a substantial benefit to the defendant, that makes it inequitable for the defendant to retain the benefit at the plaintiff's expense, even though there is no contract between them.

In the case before us, Gaier and Thornburgh's successful representation of the Garretts arguably produced a benefit to Midwestern by facilitating its recovery of its subrogation claim from Westfield. However, there is no evidence tending to show any substantial detriment to Gaier and Thornburgh. It would appear that they were handsomely rewarded for their efforts by their recovery of fees in the amount of $38,010.40 out of the settlement that the Garretts received from Westfield. In the absence of any showing that Gaier and Thornburgh's successful representation of the Garretts resulted in a substantial detriment to Gaier and Thornburgh, we are satisfied that no claim of unjust enrichment or *quantum meruit* was made out, and that Midwestern was entitled to judgment as a matter of law.

Gaier and Thornburgh's sole assignment of error is overruled.

### III

Gaier and Thornburgh's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and WOLFF, JJ., concur.