THE ANDERSONS, INC., Plaintiff,

v.

CONSOL, INC., Defendant.

No. 3:00 CV 7290.

United States District Court,
N.D. Ohio,
Western Division.

Jan. 25, 2001.

Elizabeth J. Hall, The Andersons, Inc., Maumee, OH, James R. Jeffery, Spengler Nathanson, Toledo, OH, for Andersons, Inc., The, Plaintiff.

Brant T. Miller, Christopher J. Gagin, James R. Miller, Rodger L. Puz, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Consol Inc., Defendant.

## ORDER

CARR, District Judge.

Plaintiff The Andersons, Inc. brings this action against Defendant Consol, Inc. claiming breach of commitments and un-

derstandings, unjust enrichment, reasonable reliance, unconscionable conduct, and intentional and/or negligent misrepresentation. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Pending is defendant's renewed motion for summary judgment pursuant to Fed. R.Civ.P. 56(c). For the following reasons, defendant's motion shall be granted.

## BACKGROUND

On July 21, 1998, plaintiff's representatives met with defendant's representatives to negotiate a lease from plaintiff to defendant of two train sets of open-top coal cars. Defendant intended to use the cars to transport coal to various stipulated locations throughout the United States.

On October 26, 1998, plaintiff sent, via email, a proposed lease agreement to defendant. The proposed lease agreement contained a price term. On November 16, 1998, defendant provided plaintiff with a letter of intent to lease 131 railroad coal cars from plaintiff under the terms of the proposed lease agreement. Defendant's correspondence included a January 1, 1999, target date for the rail cars to be available.

On December 24, 1998, defendant unilaterally terminated negotiations and withdrew its November 16, 1998, letter of intent. Plaintiff brought this suit claiming that defendant breached the letter of intent that existed between the parties.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Choice of Law

Plaintiff claims Ohio law applies; defendant argues that Pennsylvania law applies.

Defendant acknowledges that, except for the statute of limitations for plaintiff's intentional and/or negligent misrepresentation claim, there is no conflict between Ohio and Pennsylvania law. Plaintiff argues that all of its claims are governed by Ohio law.

■ A federal court with diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Barents Navigation Ltd. v. Western Overseas, Inc.*, No. 3:98CV7606, 1999 U.S. Dist. LEXIS 21211, at *5, 1999 WL 1490855, at *2 (N.D.Ohio Dec.13, 1999). A court must conduct conflict of laws analysis only if there is an actual conflict between local law and the law of another jurisdiction. 1999 U.S. Dist. LEXIS 21211, at *8, 1999 WL 1490855, at *3 (citing *Akro–Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 224, 685 N.E.2d 246 (1996)) (citing *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico S.A.*, 528 F.Supp. 1337, 1339–40 (S.D.N.Y.1982)); *Reliance Elec. Co. v. KJ Elec.*, No. 72424, 1998 Ohio App. LEXIS 5771, at *8, 1998 WL 842062, at *3 (Dec. 3, 1998); *Stocklas v. Erie Ins. Group*, No. 96–L–186, 1997 Ohio App. LEXIS 4571, at *8, 1997 WL 665980, at *3 (Oct. 10, 1997) ("A predicate to invoking choice of law principles is that the laws of different states conflict; if there is no conflict, the law of the forum state controls.") (citation omitted).

■ Local law governs if the party seeking the application of foreign law does not demonstrate a conflict. *Barents Navigation*, 1999 U.S. Dist. LEXIS 21211, at *8, 1999 WL 1490855, at *3; *see also Cross v. Carnes*, 132 Ohio App.3d 157, 168, 724 N.E.2d 828 (1998) ("Further, the party asserting the application of the foreign law has the initial burden to demonstrate such a conflict.") (citation omitted).

■ With regard to the conflict between Ohio and Pennsylvania law as to the statute of limitations for plaintiff's tort claims, defendant states, "[W]ith the exception of [sic] statute of limitations on The Andersons' tort claims, CONSOL believes that similar results would lie upon the application of Pennsylvania or Ohio law .... As such, CONSOL does not believe that there is any true conflict between the applicable state laws." (Doc. 51 at 6). Plaintiff argues local, Ohio law must govern. The only conflict of laws issue, therefore, surrounds the statute of limitations for the tort claims because neither party presents an argument in favor of applying non-local law to plaintiff's other claims.

Determination of which statute of limitations applies is, however, not necessary. Regardless of whether the Ohio or Pennsylvania statute of limitations applies, the tort claim is within either state's statute of limitations. As this court previously found, plaintiff's tort claim relates back to the date of the original complaint filing. (Doc. 49 at 2). The complaint was filed timely under either Ohio's four-year statute or Pennsylvania's two-year statute. Any conflict of laws issue is immaterial because plaintiff's claim comes within either statute of limitations.

Ohio law, therefore, governs all of plaintiff's claims because neither party has demonstrated a meaningful conflict of laws for any of plaintiff's claims.

## II. Count I: Breach of Commitments and Understandings

■ Plaintiff's brief states plaintiff has not brought suit based on a written agreement. Plaintiff's suit is, instead, based on defendant's conduct during lease negotiations. Plaintiff's brief also states that a cause of action exists for failure to negotiate in good faith under Pennsylvania law. In response, defendant first argues that there is no enforceable agreement between

the parties. Defendant also argues that neither the complaint nor the amended complaint asserts a claim for breach of an alleged duty to negotiate in good faith. I agree.

Plaintiff's amended complaint asserts five causes of action: 1) breach of commitments and understandings; 2) unjust enrichment; 3) reasonable reliance; 4) unconscionable conduct; 5) and intentional and/or negligent misrepresentation. Plaintiff's amended complaint does not assert a cause of action for failure to negotiate in good faith. Plaintiff, additionally, has not sought leave to amend its complaint to add a claim for failure to negotiate in good faith. Any putative claim for failure to negotiate in good faith, as asserted in plaintiff's brief, is not a part of this case.

In any event, had plaintiff asserted a claim for failure to negotiate in good faith, such claim would be dismissed because plaintiff has not shown that Ohio recognizes such cause of action. In support of its argument, plaintiff merely relies on a Third Circuit decision based on Pennsylvania law, *Channel Home Ctrs. Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291 (3d Cir.1986). Because plaintiff asserts the failure to negotiate in good faith claim under Pennsylvania law and Ohio law governs this action, plaintiff's claim shall be dismissed.

Because a claim for failure to negotiate in good faith is plaintiff's only argument in response to defendant's argument that there is no enforceable agreement and because the claim for failure to negotiate in good faith shall be dismissed, Count I of the complaint shall be dismissed. Defendant's renewed motion for summary judgment on plaintiff's breach of commitments and understandings claim shall be granted.

### III. Count II: Unjust Enrichment

In its unjust enrichment claim, plaintiff asserts, "Defendant has been unjustly enriched by use of the pricing structure provided by the Agreement between the parties upon which Defendant negotiated and entered into separate agreements with other third parties for transportation of the coal as contemplated by Defendant's Agreement with Plaintiff . . . ." (Doc. 33 at 3).

■ The elements of unjust enrichment are: 1) a benefit conferred on defendant by plaintiff; 2) defendant's knowledge of the benefit; and 3) defendant's retention of the benefit under circumstances where it would be unjust to retain the benefit without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984); *Dixon v. Smith*, 119 Ohio App.3d 308, 317–18, 695 N.E.2d 284 (1997) (citing *L & H Leasing Co. v. Dutton*, 82 Ohio App.3d 528, 612 N.E.2d 787 (1992)). "[Unjust enrichment] arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss." 18 Ohio Jurisprudence 3D *Contracts* § 299 (2001).

A plaintiff seeking recovery under the theory of unjust enrichment additionally must "prove that [plaintiff] has incurred a substantial detriment that is causally connected to a substantial benefit conferred on the defendant." *U.S. Health Practices, Inc. v. Byron Blake, M.D. Inc.*, No. 00AP–1002, 2001 Ohio App. LEXIS 1291, at *6, 2001 WL 277291, at *2 (Mar. 22, 2001) (citing *Gaier v. Midwestern Group*, 76 Ohio App.3d 334, 338, 601 N.E.2d 624 (1991)). The fact that one party has been enriched does not necessitate a finding of unjust enrichment. *Id.* (citing *Katz v. Banning*, 84 Ohio App.3d 543, 552, 617 N.E.2d 729 (1992)). A plaintiff must show "a superior equity so that it would be unconscionable for [defendant] to retain the benefit." *Directory Servs. Group v. Staff Builders Int'l, Inc.*, No. 78611, 2001

Ohio App. LEXIS 3108, at *7, 2001 WL 792715, at *3 (July 12, 2001) (citing *Katz,* 84 Ohio App.3d at 552, 617 N.E.2d 729).

■ Defendant argues: 1) the price quote was given before defendant provided plaintiff with a letter of intent and before defendant had any alleged obligation to plaintiff; 2) the alleged benefit to defendant did not involve a detriment to plaintiff; and 3) the evidence does not support the contention that defendant used the price structure to enter into agreements with third parties because negotiations with third parties did not occur until after defendant realized that plaintiff and defendant might not come to an agreement.

Plaintiff's brief states that defendant used plaintiff's bid twice in submitting bids to defendant's customer, PEPCO, and was successful on its second bid. Plaintiff argues:

> When the type of railcars Consol needed in order to secure the PEPCO business could only be procured from Andersons, Consol wanted to lease the railcars from Andersons. When Consol was able to secure railcars from its existing lessors at a lower rate than Andersons' rental rate, Consol was no longer interested in leasing railcars from Andersons and positioned itself to terminate the lease negotiations with Andersons due to alleged irreconcilable differences over the lease terms. Andersons by focusing on the lease opportunity with Consol did not pursue other potential opportunities to lease the railcars.

(Doc. 57 at 13) (citing Brown Dep. at 24).

I find that plaintiff cannot prove that plaintiff received a benefit from defendant or plaintiff has a superior equity making it unconscionable for defendant to retain any alleged benefit.

Plaintiff cannot prove that it received the type of benefit necessary to sustain an unjust enrichment claim. Defendant never used any of plaintiff's cars while refusing to pay for the use of the cars. Defendant's actions simply manifest comparison shopping. Absent a more direct benefit, defendant was entitled to comparison shop and cannot be held liable under the theory of unjust enrichment. *See e.g., Telephone Mgmt. Corp. v. Goodyear Tire & Rubber Co.,* 32 F.Supp.2d 960, 972 (N.D.Ohio 1998) ("Instead, the evidence shows that TMC's involvement was a bid to act on Goodyear's behalf. When TMC put the proposal in writing, Goodyear rejected it. Consequently, TMC conferred no benefit.").

Even if plaintiff could prove it conferred a benefit on defendant under an unjust enrichment theory, plaintiff cannot prove that it has superior equity and it would be unconscionable for defendant to retain any alleged benefit. Again, defendant did nothing more than comparison shop or use an estimate in preparing its own estimate. This type of conduct occurs often among subcontractors and general contractors. *See e.g., Clark Trucking of Hope Mills, Inc. v. Lee Paving Co.,* 109 N.C.App. 71, 426 S.E.2d 288, 289 (1993) (unjust enrichment claim could not lie for general contractor's use of a subcontractor's bid in the general contractor's bid when the general contractor later chose another subcontractor). It would not be unconscionable for defendant to retain any alleged benefit of plaintiff's estimates.

Defendant's renewed motion for summary judgment on plaintiff's unjust enrichment claim shall be granted.

## IV. Count III: Reasonable Reliance/Promissory Estoppel

Plaintiff's promissory estoppel claim asserts that plaintiff reasonably relied on defendant's commitments and representations and that defendant's failure to fulfill its representations is the proximate cause of plaintiff's injuries.

The Supreme Court of Ohio has adopted the Restatement of Contracts 2d definition for promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Talley v. Teamsters, Chauffeurs, Warehousemen, and Helpers, Local No. 377*, 48 Ohio St.2d 142, 146, 357 N.E.2d 44 (1976) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90 (1973)).

■ To demonstrate promissory estoppel, the plaintiff must establish: "1) a promise, clear and unambiguous in its terms; 2) reasonable and foreseeable reliance; and 3) injury resulting from the reliance." *CSX Transp. Inc. v. Occidental Chem. Corp.*, 130 F.Supp.2d 936, 947 (S.D.Ohio 2001) (citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726 (1998)).

■ Defendant first argues that there is no writing to satisfy the statute of frauds and that the facts necessary to preclude a statute of frauds defense are not present in this case.[1] Defendant also argues:

> There is *no* dispute that CONSOL imposed two conditions on its agreement to lease coal railcars from The Andersons—one of which was "the successful negotiation of a definitive lease agreement containing terms and conditions which are acceptable to the senior management of CONSOL, Inc." . . . It is also undisputed that there was no such

"successful negotiation" as the parties could not agree on (what were to CONSOL—and apparently to The Andersons) several important lease provisions.

(Doc. 58 at 6) (citations and footnotes omitted) (emphasis in original).

Defendant, with these statements, essentially argues that plaintiff cannot meet the first element of a promissory estoppel claim because plaintiff cannot show a promise, clear and unambiguous in its terms. Plaintiff, in response to defendant's arguments, contends:

> Anderson's [sic] claim of promissory estoppel is based upon neither a misrepresentation by Consol that Consol was drafting the railcar lease nor an understanding that Consol would reduce the parties' lease agreement to a writing. Andersons' claim against Consol is based upon Consol's conduct during the parties' lease negotiations. The decision in *McCarthy* is distinguishable on its facts.

(Doc. 57 at 8).

Plaintiff also contends there is sufficient evidence to support a promissory estoppel claim.

While unclear from plaintiff's brief, plaintiff appears to make a subtle distinction between a lease and conduct demonstrating intent to enter into a lease. Plaintiff argues that its promissory estoppel claim is not based on any actual lease agreement, which must be in writing, but on defendant's conduct or promise to enter into a lease agreement. Plaintiff attempts

---

1. It is unclear how the statute of frauds affects a promissory estoppel claim. The Ohio Supreme Court has not held specifically that promissory estoppel may be used to preclude a statute of frauds defense, and in *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgmt., Inc.*, 87 Ohio App.3d 613, 624–27, 622 N.E.2d 1093 (1993), the court noted that lower Ohio courts have reached different conclusions.

In *McCarthy*, the court determined that promissory estoppel could preclude a statute of frauds defense "only when there has been (1) a misrepresentation that the statute's requirements have been complied with or (2) a promise to make a memorandum of the agreement." *Id.* at 627, 622 N.E.2d 1093.

to avoid a statute of frauds issue by distinguishing between a lease agreement and conduct demonstrating a lease or intent to enter into a lease. Plaintiff thus argues that the promise for promissory estoppel purposes stems from defendant's conduct, not a written representation/promise. Because defendant's conduct did not rise to the level of a promise, I need not address either defendant's argument that there is no writing to satisfy the statute of frauds or plaintiff's purported distinction between a lease agreement and conduct manifesting such agreement.

The first element of a promissory estoppel claim, to reiterate, is a promise, "clear and unambiguous in its terms." *CSX*, 130 F.Supp.2d at 947 (emphasis supplied). A promise, for promissory estoppel purposes, must "involv[e] 'commitment,' or 'manifestation of an intention to act or refrain from acting in a specified way.' " *Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 725 (1st Cir.1999) (quoting *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 143 (1st Cir.1998) (citation omitted)); *Lynch v. EG & G Mound Applied Tech., Inc.*, No. 17333, 1999 Ohio App. LEXIS 187, at *18, 1999 WL 34790, at *7 (Jan. 29, 1999) ("[Miller's] comments do not support Lynch's promissory estoppel claim. Miller's comments did not convey a clear, unambiguous promise that Lynch would be accepted for participation in the VSPP simply upon his application to that program.").

To be "clear and unambiguous," the promise cannot be conditional. *See Advanced Marine Tech., Inc. v. Burnham Sec., Inc.*, 16 F.Supp.2d 375, 381 (S.D.N.Y. 1998) ("And AMT's claim fails essentially for the same reason as its contract claim. Victory and, to the extent that he spoke for it, Burnham made it unmistakably clear that any obligation to proceed was conditional upon the execution of a written contract."); *Arnold v. PVH, Inc.*, No. 95–2818, 1996 Wisc.App. LEXIS 1260, at *10, 1996 WL 554423, at *4 (Oct. 1, 1996) ("We agree with the trial court that the summary judgment materials only show, at best, a conditional promise on the part of Firstar and that this conditional promise was insufficient as a matter of law to trigger the doctrine of promissory estoppel."). As the court stated in *Advanced Marine*, 16 F.Supp.2d at 381 (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 79 (2d Cir.1984)), "[P]laintiff manifestly cannot make an end run around [defendant's] reservation against undertaking any legal obligation absent a signed contract by recharacterizing the contract claim as one of promissory estoppel."

Plaintiff argues that its promissory estoppel claim and the promise required for the claim are based on defendant's conduct during the lease negotiations. Plaintiff spends nearly four pages in its brief assuming that it justifiably relied on defendant's promise, arising through defendant's conduct, to lease railcars from plaintiff. (Doc. 57 at 8–11). Plaintiff's discussion, however, simply illustrates the fact that the parties were engaged in lease negotiations; it does not demonstrate the clarity of promise required for a promissory estoppel claim. If anything, the elaborate discussion of the disagreements during lease negotiations illustrate a lack of clarity in any alleged promise.[2]

---

2. Even if defendant's conduct can be considered a promise for promissory estoppel purposes, plaintiff's reliance on the conduct was not reasonable. In *Doll v. Grand Union Co.*, 925 F.2d 1363, 1371 (11th Cir.1991), the court found the defendant's conduct was sufficient to create a promise for promissory estoppel purposes because defendant continuously reiterated its interest in the property held by plaintiff, defendant stated it would " 'make the economics work out,' " and there was a letter of intent. The court, however, found that it was not reasonable for plaintiff to rely on such conduct because defendant was clear it had no intent to become obligated until a formal lease was drafted, approved,

Defendant's renewed motion for summary judgment on plaintiff's promissory estoppel claim shall be, therefore, granted.

## V. Count IV: Unconscionable Conduct

◼ In its fourth claim, plaintiff asserts that defendant intentionally asked plaintiff for an estimate to gain a favorable lease rate from a third party. Plaintiff claims defendant's conduct was unconscionable.

Defendant argues that there is 1) no factual support for a claim of unconscionable conduct; 2) unconscionability describes a contract and is not a claim upon which relief may be granted; and 3) unconscionability is not actionable under any theory pleaded by plaintiff. Because I agree that unconscionability, by itself and in this case, is not a claim upon which relief may be granted, I will not address defendant's remaining arguments.

Unconscionability typically is alleged when there is an actual contract between the parties. *See Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993) (" 'Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' ") (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965); *Kugler v. Romain*, 58 N.J. 522, 279 A.2d 640, 652 (1971)); *Dorsey v. Contemporary Obstetrics*, 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (1996) ("The unconscionability doctrine consists of two prongs: (1) substantive unconscionability . . .; and (2) procedural unconscionability . . . . 'Substantive unconscionability involves those factors which relate to the *contract terms themselves* and whether *they* are commercially reasonable.' ") (citing *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (1993)) (emphasis in original); 17 Ohio Jurisprudence 3D *Contracts* § 84 (2001) ("The term 'unconscionability' includes an absence of meaningful choice on the part of one of the parties together with contract

---

and signed by the parties. *Id.* at 1373. The court stated:

> Grand Union did indeed make promises to the partners. It promised them that it was interested in leasing space in their development. It promised them that it planned to pursue negotiations. It promised them that it had every intention of finalizing an agreement with them. What Grand Union also made clear was that despite its interest in the site and its desire to consummate a long-term lease, it had no intention of becoming obligated until the lease was drafted, approved, and signed by both parties. The partners' reliance on Grand Union's statements of intent in light of their conditional nature clearly was unreasonable.

*Id.* (citing *Protective Life Ins. Co. v. Robinson*, 193 Ga.App. 316, 387 S.E.2d 603, 605 (1989)).

Also persuasive was the fact that the conditional language was beneficial for the plaintiff as well as the defendant, and the plaintiff also could have terminated negotiations. *Id.* ("It is important to remember that this clause also had an upside for the partners as well. If during the course of negotiations, another grocery chain had offered the partnership a higher rent than Grand Union, they would have been free to accept it.").

Defendant's letter of intent stated, "[A]ny such transaction is conditioned . . . upon the successful negotiation of a definitive lease agreement containing terms and conditions which are acceptable to the senior management of CONSOL Inc." (Doc. 51 at 9 n.5). This conditional language, therefore, negates any justifiable reliance. *See also G & F Assocs. Co. v. Brookhaven Beach Health Related Facility*, 249 A.D.2d 441, 671 N.Y.S.2d 510, 511 (1998) ("As the alleged oral promise was conditional, the plaintiff's reliance upon it was not reasonable, and a cause of action for promissory estoppel does not lie."); *Lectus, Inc. v. Rainier Nat'l Bank*, 97 Wash.2d 584, 647 P.2d 1001, 1004 (1982) ("Given the conditional nature of the purported promise, we hold reliance thereon to be unreasonable as a matter of law.").

terms that are unreasonably favorable to the other party.").

There was, however, no contract between plaintiff and defendant, and plaintiff cannot recover on a theory of unconscionability of contract. Plaintiff instead argues that defendant's conduct was unconscionable: "Defendant intentionally sought and obtained a set price for lease of the railcars from Plaintiff not for the purpose of entering into a contract with Plaintiff but rather for the purpose of obtaining a favorable lease rate as a result from third parties, which constitutes unconscionable and actionable conduct . . . ." (Doc. 33 at 4).

Plaintiff states, "Andersons alleged in Count IV of its Complaint that Consol used Andersons' rental rate to obtain a favorable contract with a third party. . . . The third party Andersons refers to is PEPCO." (Doc. 57 at 13). Plaintiff, therefore, essentially argues that its unconscionable conduct claim stems from defendant's use of plaintiff's estimate in defendant's bid to PEPCO. This argument is identical to plaintiff's argument in Count II for unjust enrichment.

Unconscionability is a component of an unjust enrichment claim. "It is not sufficient for the plaintiff to show that he or she has conferred a benefit upon the defendant. The plaintiff must . . . show that, under the circumstances, he or she has a superior equity so that . . . it would be unconscionable for the defendant to retain the benefit." 18 OHIO JURISPRUDENCE 3D Contracts § 299 (2001) (citation omitted). Plaintiff must prove that it would be unconscionable for the defendant to retain the benefit provided by the plaintiff for an unjust enrichment claim to succeed. *Directory Servs. Group v. Staff Builders Int'l, Inc.*, No. 78611, 2001 Ohio App. LEXIS 3108, at *7, 2001 WL 792715, at *3 (July 12, 2001); *U.S. Health Practices, Inc. v. Byron Blake, M.D., Inc.*, No. 00SP–1002, 2001 Ohio App. LEXIS 1291, at *6, 2001 WL 277291, at *2 (Mar. 22, 2001) (" '[Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendants to retain the benefit.' ") (quoting *Katz v. Banning*, 84 Ohio App.3d 543, 552, 617 N.E.2d 729 (1992); *Fox*, 71 Ohio App. at 239, 49 N.E.2d 69) (alterations in original).

Because plaintiff does not supply any additional basis for defendant's unconscionable conduct other than defendant's conduct in using plaintiff's estimate in defendant's bid, the unconscionable conduct must be viewed as part of plaintiff's unjust enrichment claim and not a separate cause of action.

Because plaintiff cannot use unconscionability as a separate cause of action and because plaintiff's claim for unjust enrichment shall be dismissed, defendant's renewed motion for summary judgment on Court IV shall be granted.

## VI. Count V: Intentional and/or Negligent Misrepresentation

### A. Intentional Misrepresentation

Plaintiff asserts in its last claim that defendant intentionally or negligently misrepresented or concealed facts that plaintiff relied on as true.

Defendant contends that plaintiff's claims for intentional and/or negligent misrepresentation cannot succeed as a matter of law.[3]

---

**3.** In *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 149, 684 N.E.2d 1261 (1996), the court stated:

> While a plaintiff may allege, in the alternative, both fraud and negligent misrepresentation as to the same course of conduct, a defendant cannot be found to have committed an act both intentionally and negligently. As to [defendant's] conduct in the business transaction at issue, it could be either intentional or negligent, but it could not be both. Where fraud and negligent misrepre-

■ To succeed on a claim for intentional misrepresentation, a plaintiff must prove:

(a) a representation or, where there is a duty to disclose, concealment of a fact,

(b) which is material to the transaction at hand,

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d) with the intent of misleading another into relying upon it,

(e) justifiable reliance upon the representation or concealment, and

(f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of County Commrs. of Stark County*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986) (quoting *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984)) (quoting *Friedland v. Lipman*, 68 Ohio App.2d 255, 429 N.E.2d 456 (1980)).

■ Defendant first argues that plaintiff cannot prove that defendant made a misrepresentation or concealed a fact when defendant had a duty to disclose the fact. Plaintiff's brief alleges several misrepresentations or concealment of facts when there was a duty to disclose: 1) James Dillon stated defendant was totally self-insured but later admitted defendant's insurance carried large deductibles; 2) Dillon failed to disclose defendant's planned initial public offering which would have resolved several lease provisions; 3) Consol received OT–5 approval for running rail cars on United States railroads; and 4) defendant found lease provisions unacceptable when defendant had agreed to similar lease provisions with other rail equipment lessors. Plaintiff further argues:

Andersons believes that it can establish that the above described representations were made by James Dillon with knowledge of their falsity or with utter disregard for the truth, because James Dillon was doing all he could to avoid entering into a lease with Andersons. James Dillon's motivation was the sudden availability of GATX railcars formerly used by Consol to service the Public Utility of New Hampshire's Bow Terminal which could be leased at a much lower rate than Andersons' railcars.

(Doc. 57 at 15).

Plaintiff, thus, has alleged a misrepresentation of fact.

Defendant argues that it did not have a duty to disclose the initial public offering. In *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988) (citations omitted), the court stated, "Ordinarily in business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." The court, however, also stated, "Full disclosure may also be required of a party to a business transaction 'where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts.'" *Id.* (citing *Connelly v. Balkwill*, 174 F.Supp. 49, 58 (N.D.Ohio 1959); *Miles v. Perpetual Sav. & Loan Co.*, 58 Ohio St.2d 97, 101, 388 N.E.2d 1367 (1979)); *see also Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 150, 684 N.E.2d 1261 (1996) (" '[A] party is under a duty to speak ... if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another pary [sic] to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such informa-

sentation are claimed as to the same set of underlying facts, if fraud is proved, then the

claim of negligent misrepresentation is necessarily subsumed thereby.

tion to the other party will render a prior statement or representation untrue or misleading.' ") (quoting *Central States Stamping Co. v. Terminal Equip. Co., Inc.*, 727 F.2d 1405, 1408 (6th Cir.1984)) (alterations and emphasis in original); *Mitchell v. Slocum*, 7 Ohio Misc.2d 33, 34–35, 455 N.E.2d 20 (Ohio Mun.1981) ("Although mere silence does not amount to fraud, there are situations when it becomes the duty of a person to speak in order that the party with whom he is dealing may be placed on an equal footing with him.") (citing 24 OHIO JURISPRUDENCE 2D 678, *Fraud and Deceit* § 76). Courts distinguish between mere silence and concealment. Concealment is actionable because it implies a purpose to commit fraud. *Klott v. Associates Real Estate*, 41 Ohio App.2d 118, 121–22, 322 N.E.2d 690 (1974); *Mitchell*, 7 Ohio Misc.2d at 34–35, 455 N.E.2d 20.

Defendant relies on *Peerless Wall & Window Coverings, Inc. v. Synchronics, Inc.*, 85 F.Supp.2d 519, 532 (W.D.Pa.2000), for the proposition that a duty to disclose does not arise in arm's length business transactions. The court in *Peerless*, however, also stated, "In fact, 'there is virtually no Pennsylvania case in which a defendant has been held to have a duty to speak when both the plaintiff and defendant were sophisticated business entities, *entrusted with equal knowledge of the facts[ ]* ' 'and ample access to legal representation.' " *Id.* (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir.1995)) (alteration in original) (emphasis added).

It is arguable that, in this case, plaintiff and defendant were not on equal footing. It is also arguable that defendant should have disclosed the initial public offering. Plaintiff may not have possessed equal access to information on the initial public offering. As such, a genuine issue of material fact remains as to whether defendant had a duty to disclose information on the initial public offering.

Defendant next argues that plaintiff cannot prove that any alleged misrepresentation was material. Plaintiff argues, "The fact that Consol did have insurance coverage, even if it was available only after high deductibles were met at high levels, was certainly relevant to the parties' lease negotiations." (Doc. 57 at 16). Plaintiff also states, "In fact, Consol's proposed IPO was material to the lease negotiations because of the parties' inability to reach agreement on the insurance provisions, the default provision and the requirement that Consol provide financial statements on a regular basis." (Doc. 57 at 17).

In *Mulvey v. King*, 39 Ohio St. 491, 495 (1883), the court defined materiality of a misrepresentation or concealment of fact as "affecting the identity, value or character of the subject-matter of the contract ...." "It is broadly stated, therefore, that the representations must have operated as an inducement to the making of the contract in question, that is, must have influenced the mind of the party to whom they are made in making the contract or fixing its terms." 50 OHIO JURISPRUDENCE 3D *What is Material* § 101 (1984) (footnote omitted). Not every misrepresentation, therefore, is material and substantial.

Plaintiff simply cannot prove that the alleged misrepresentations were material to the transaction. Plaintiff has offered no evidence other than its bald conclusions that the negotiations would have been different but for defendant's alleged misrepresentations and that the alleged misrepresentations were relevant to the lease. Plaintiff's assertions do not prove the alleged misrepresentations were material to the transaction or that they affected the identity, value, or character of the subject matter of the lease.

Defendant's renewed motion for summary judgment on plaintiff's intentional misrepresentation claim shall be granted.

### B. Negligent Misrepresentation

■ The elements of negligent misrepresentation are: " 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989) (emphasis in original) (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1965); *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286, 490 N.E.2d 898 (1986); *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 436 N.E.2d 212 (1982)).

■ A defendant only can be liable for affirmatively supplying false information or making a misrepresentation of fact under a negligent misrepresentation cause of action. *See Textron Fin. Corp.*, 115 Ohio App.3d at 149, 684 N.E.2d 1261 ("Negligent misrepresentation does not lie for omissions; there must be some affirmative false statement.") (citing *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 132–33 (Tenn.Ct.App.1982)). The misrepresentation must be material to succeed on a negligent misrepresentation claim. *Gem Savings Assoc. v. Aqua Sportsman, Inc.*, No. C–910361, 1992 Ohio App. LEXIS 4107, at *6, 1992 WL 192500, at *2 (Aug. 12, 1992) ("To prevail on its claim of negligent misrepresentation, [plaintiff] must demonstrate that it justifiably relied upon *material misrepresentations* made by [defendant].") (citing *Burr*, 23 Ohio St.3d 69, 491 N.E.2d 1101) (emphasis added).

As stated earlier, plaintiff has alleged several affirmative misrepresentations of fact: 1) James Dillon stated defendant was totally self-insured but later admitted defendant's insurance carried large deductibles; 2) Consol received OT–5 approval for running rail cars on U.S. railroads; and 3) defendant found lease provisions unacceptable when defendant agreed to similar lease provisions with other rail equipment lessors. For the reasons stated above, plaintiff cannot prove these alleged misrepresentations were material.

Defendant's renewed motion for summary judgment on plaintiff's negligent misrepresentation claim shall be granted.

### CONCLUSION

It is, therefore,

### ORDERED THAT

Defendant's renewed motion for summary judgment be, and hereby is, granted.

**So ordered.**