**CINCINNATI (city), Appellee v FOX et, Appellants.**

Ohio Appeals, 1st District, Hamilton County.

No. 6194. Decided January 25, 1943.

60

John D. Ellis, City Solicitor, Cincinnati, for appellee.
John J. Cooney, Cincinnati, Edward H. Brink, Jr., Cincinnati, and John W. Cowell, Cincinnati, for appellants.

## OPINION

By MATTHEWS, PJ.

This is an appeal on questions of law from a judgment rendered on an instructed verdict in favor of the City of Cincinnati for $1947.24 against each of the appellees, as reimbursement for an amount which the City of Cincinnati was required to pay on a judgment in favor of the heirs of Wm. O. Mashburn, deceased, for their interest in a certain tract of real estate located on the south side of Fifth Street in the City of Cincinnati.

In 1928, the City of Cincinnati filed an action in the Court of Common Pleas of Hamilton County, to appropriate property for the widening of East Fifth Street. Owing to inclusion in the proceeding of more than it was intended to use in the widening, a controversy arose as to the right of the City to appropriate this excess which delayed the proceeding until the Supreme Court of the United States decided the issue adversely to the City of Cincinnati in the case of Vester v Cincinnati, 281 U. S. 439. Thereafter, the City filed an amended petition on September 19th, 1931, so as to eliminate the excess and to seek an appropriation of a strip twenty-five feet wide actually intended for the widening of the street.

On January 22nd, 1932, a verdict of a jury was returned assessing the compensation to be paid to the owners of this property at $30,000.00. The original defendants, all of whom were duly served with summons, were Wm. O. Mashburn and Jesse McClain, owners of a perpetual lease with option of purchase, and the appellants herein and Wm. F. Fox, now deceased, co-owners of the reversion. Wm. O. Mashburn had died before the verdict was returned and there never was any revivor of the action against his heirs or personal representatives.

It is conceded that the verdict was returned as the result of an agreement between the City, on the one hand, and the defendant McClain and the administrators of the estate of Wm. O. Mashburn, on the other hand.

It is also conceded that the appellants and Wm. F. Fox had no notice of the hearing at which the verdict was returned and knew nothing of the negotiations that had preceded it until afterwards and that as soon as they received the information, they notified the City that they would not be bound by the verdict and wanted the amount of their compensation judicially determined. As a result of this notice. the City arranged for a hearing before the Court at which Wm. F. Fox, Attorney, representing himself and the appellants herein, the City Solicitor, Mr. Wesselman as attorney for the Administrators of the estate of Wm. O. Mashburn, and Jesse McClain, were present. This was on June 30th, 1932. Nothing was

presented to the Court, but Mr. Fox stated that he would be satis-
fied if the entire $30,000.00 was paid to the reversioners, and, as a
result of the negotiations thereby instituted, an agreement was
reached at a meeting on August 1st, 1932, whereby $30,000.00 was
paid to Mr. Fox, as attorney for the reversioners, who thereupon de-
livered to the City Solicitor a deed conveying the premises contain-
ing covenants of general warranty, with an exception made upon
the insistence of Mr. Fox of "Any claim arising under or/and
through lease from grantors to Harry S. Leyman recorded in Lease
Book 185, page 13 of the Hamilton County, Ohio, Land Records",
which lease had been transferred to Wm. O. Mashburn and Jesse
McClain. There is no doubt that the City accepted the deed with
this exception with full knowledge it did not purport to convey the
leasehold, and, thereupon, at the same meeting accepted a special
warranty deed executed by Wm. O. Mashburn, Jr., and John C.
Mashburn, Administrators of the estate of Wm. O. Mashburn, pur-
porting to convey these same premises and warranting the title
against the lawful claims of all persons claiming by, through, or
under them. Undoubtedly, the City was under the impression that
it had thereby acquired the unencumbered fee simple title to the
premises. There is no claim that the reversioners assumed any
obligation to see that the City did acquire such a title or had any-
thing to do with the preparation of the deed from the Mashburn
Administrators. The City prepared both deeds.

At the same meeting Wm. F. Fox, for himself and the other
reversioners and Mr. Wesselman, as attorney for McClain and the
Administrators of the estate of Wm. O. Mashburn, signed an entry
to be made in the appropriation proceeding setting forth the terms
under which the $30,000.00 had been paid to the reversioners. The
City Solicitor knew of this but conceiving that the matter was of no
interest to the City did not sign the entry. This entry was as
follows:

"This cause coming on for hearing on motion of W. F. Fox, a
defendant herein, to have confirmed, an agreement between the
parties interested in parcel four (4), as described in the petition; as
to the distribution of the Thirty Thousand ($30,000.00) Dollars,
heretofore found by the Jury as the condemnation price to be paid
by the City of Cincinnati for the north twenty-five (25) feet of
said tract, taken for the widening of East Fifth Street.

"First, To W. F. Fox, Mary A. Fox, Bertha F. Wolking, Joseph
Fox, May Fox and Edna A. Fox, or their attorney, W. F. Fox, the sum
of Twenty-six Thousand ($26,000.00) Dollars, which amount will also
be a credit upon the sum of Ninety Thousand ($90,000.00) Dollars
purchase price in the event the lessee elects to purchase under the
terms of the lease recorded in Lease Book 185, page 13, of the
Hamilton County Land Records.

"Second, To the above named parties, or to W. F. Fox, Attorney,
Four Thousand ($4,000.00) Dollars, to be held in trust, to be used

by the lessee or his assigns, in reconstructing or repairing the part remaining of the building now on said parcel, after the north part thereof is removed under the within proceedings.

"If, however, the present building is not repaired or reconstructed, within six months, or is torn down, then the Four Thousand ($4,000.00) Dollars is to be distributed as provided in paragraph First above."

The verdict remained undisturbed, but no judgment was rendered upon it.

The City took possession at some time after the verdict was returned; demolished a part of the building and incorporated the space into the widened East Fifth Street. And thus the matter rested until October 24th, 1935, when Lucia Emily Mashburn, asserting an undivided title to the leasehold, as one of the three heirs of Wm. O. Mashburn, filed a petition in the appropriation proceeding seeking to have the verdict and all other proceedings therein after the death of Wm. O. Mashburn, set aside, and that the value of her interest in the leasehold be determined, on the ground that neither she nor the other heirs or next of kin had been parties to the action. W. O. Mashburn, Jr., and John Cromer Mashburn, who were the other children of Wm. O. Mashburn, filed answers and cross-petitions in which they made similar allegations and prayed that the value of their interests be assessed, and that they be given all other relief to which they might be found entitled.

On September 29th, 1937, the cause came on for hearing and the Court having found the City had gone into possession of the premises, that the compensation to be paid the owners had theretofore been fixed at $30,000.00 on August 2nd, 1932, proceeded to fix the damage to the leasehold at $21,840.00, that $4,000.00 of the $30,000.00 had been expended in restoring the front of the building on the part not appropriated, leaving $17,840.00, one-half of which was still due to heirs of Wm. O. Mashburn, and then proceeded to render judgment in favor of each of the heirs in the sum of $3894.48 against the City.

The City paid the amount of the judgment to the Mashburn heirs, demanded reimbursement from defendants, and, upon their refusal, filed this action.

In the original petition in this action there were allegations of the terms of judgments of the Court of Appeals on appeals from judgments rendered on the pleadings and these allegations show that these judgments were modified so as to leave undetermined the issue of whether Wm. F. Fox and the appellants herein were under an obligation to re-imburse the City for the amount paid to the heirs of Wm O. Mashburn. On motion, these allegations were ordered stricken from the petition and do not appear in any form in the amended petition that was filed and upon which the trial

was conducted. The defendants herein have not relied upon any prior adjudication as an affirmative defense.

The trial court instructed a verdict for the City, overruled the motion for a new trial and rendered judgment on the verdict. It is from that judgment, that this appeal was taken.

The basis of the City's claim of right of reimbursement is, that the appellants have been unjustly enriched at its expense, through mistake of fact. It is not claimed that there was any intention on the part of the appellants to incur such an obligation—that they intended to contract—but it is asserted that the law imposes an obligation in invitum just as though they had so intended. In other words, the claim is that the appellants are under a quasi contractual obligation, because the law upon fundamental principles of justice will not permit one person to unjustly enrich himself at the expense of another. 9 O. Jur., 244, et seq., and 335, et seq. The statement of the rule discloses its limitations.

(1) There must be an unjust enrichment. It is not sufficient for the plaintiff to show that it has conferred a benefit upon the defendants. It must go further and show that under the circumstances it has a superior equity so that as against it it would be unconscionable for the defendant to retain the benefit.

In Restatement of Law of Restitution, section 69, page 284, the rule is stated that:

"(1) The right of a person to restitution from another because of a benefit received because of mistake is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution."

See: 5 Williston on Contracts (Rev. ed.), sec. 1595, p. 4443.

Now, in reliance on the payment to them, the reversioners entered into an agreement with the lessees requiring them to credit $26,000.000 upon the amount of the option to purchase and expend $4,000.00 to make the befurcated building habitable and they performed that part of their agreement by making the expenditures. Furthermore, they relinquished their right to be heard before a jury as to the compensation to be paid for the taking of this property. True it is, that a verdict had been rendered, but it could not be considered as conclusively fixing the amount of the compensation so far as the reversioners were concerned. They had not been given an opportunity to present evidence and argument. The entire amount of the verdict was paid to them because of that fact. They were unwilling to agree upon that amount as a sum and then contest with the lessees over its division.

Furthermore, the reversioners, relying on this settlement, per-

mitted the City to take possession, demolish the front of the building and construct the street. It would be impossible to restore the status quo, and the City recognizing that impossibility has made no tender.

These facts are sufficient to make manifest that it would be inequitable to require the reversioners to restore any part of this payment and to demonstrate that there is no basis for the claim of unjust enrichment as between them and the City.

(2) A mistake of fact that will affect the validity of an actual contract and form the basis for the recovery of money paid must relate to a material matter. As is said in 12 Am. Jur., 618, et seq.: "The mistake must be as to a fact which enters into, and forms the very basis of the contract; it must be of the essence of the agreement, the sine qua non, or, as it is sometimes expressed, the efficient cause of the agreement. It must be such that it animated and controlled the conduct of the parties." And, at page 634: "The general rule is commonly said to be that a mistake of law does not affect the validity of a contract, where there is no mistake of fact."

See also: Williston on Contracts (Rev. Ed.) 4333, 4416, et seq.
Now does the mistake alleged meet the test of this rule? The City knew that a verdict had been returned, knew that there was nothing final or conclusive about any verdict and that there inhered in this verdict a fatal defect because of a failure to notify the reversioners of the hearing at which it was returned. It must have known of the death of Wm. O. Mashburn at the time it made the payment, because it accepted a deed from the Administrators of his estate and by the same token it knew that it was necessary for it to obtain title to the leasehold from those upon whom the title had devolved upon his death. Then what was the mistake? If any, it must have been as to the legal effect of the steps that had been taken in the appropriation proceedings or the legal sufficiency of the Administrators' deed to convey the leasehold. In either event, it would be a mistake of law and not of fact. Indeed, the City seemed to realize that, for in its pleading it recites the facts and relies upon such recital without pleading any mistake. In its brief, however, it relies on cases in which recovery was permitted of money paid in eminent domain cases, but it is believed that an analysis of those cases shows without exception that the payments were made under a mistake as to a basic fact. Apparently, the reversioners were mistaken as to the power of the Administrators because they made the agreement with them as to the disposition of the $30,000.00, but their insistence upon payment of the entire amount was entirely independent of any question of who owned or controlled the leasehold. So far as facts are concerned, the reversioners and the City got what they bargained for. The City prepared deeds and these were executed and

delivered as the consideration for the payment of the $30,000.00 to the reversioners.

(3) Closely related to the nature of the mistake that must exist to justify relief is the rule that the plaintiff can ▇ preclude himself from recovery by assuming the risk of the existence or non-existence of the fact. The rule is stated in section 11, page 42 of the Restatement of Law of Restitution, as follows:

"(1) A person is not entitled to rescind a transaction with another if, by way of compromise or otherwise, he agreed with the other to assume, or intended to assume, the risk of a mistake for which otherwise he would be entitled to rescission and consequent restitution."

In 5 Williston on Contracts (Rev. Ed.), 4332, it is said: "In the first place there must be excluded from consideration mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk. With respect to any matter not made a basic assumption of the contract the parties take their chances."

And in 12 Am. Jur., 623, it is stated that: "If parties to an agreement indicate an intention to be bound irrespective of the existence of certain facts and to take the risk of their non-existence, the validity of their agreement is not at all dependent upon the existence of such facts."

Now regardless of the character of the mistake, the parties showed clearly that they were dealing at arms length as to the subject-matter to which it related. The reversioners by insistence upon excepting from their warranty any rights that might be asserted under the lease warned the City that it assumed no responsibility. And the City on its part expressly refused to assume any responsibility in relation to the agreement made as to the manner in which the money should be allocated between the reversioners and the lessees, and the same incapacity on the part of the Administrators to convey the leasehold to the City would seem to preclude them from binding the Mashburn heirs by the agreement with the reversioners. These were problems of the respective parties in which the other had no legal interest or responsibility.

(4) The City seems to rely on an estoppel based on what took place in the appropriation proceeding. No judgment was rendered in that case and so it cannot be relied on as res adudicata.

There is no attempt by the reversioners to take an inconsistent

position in this case. The verdict stands as a verdict with its inherent defect and inclusive character. It is still the measure of the amount which the reversioners insisted should be paid to them as consideration for their deed. The agreement as to the disposition of the amount is res inter alios acta so far as the City is concerned and was so considered by it at the time.

The City relies on certain cases (Tamm v Kellogg, 49 Mo. 118, Meginnis v Nunemaker, 64 Pa. 374, Harris v Howes, 75 Me., 436, and McAlister v Reed, 53 Mo. App., 81) arising out of the taking of property under the right of eminent domain. An examination of them discloses that they announce no principle peculiar to eminent domain proceedings. They are actions by a part owner against another part owner, who had been paid the entire amount, to recover his share. The principle applied was that the defendant had disposed of the plaintiff's property, thereby unjustly enriching himself at the plaintiff's expense. Not one is an action by the condemning authority to recover money paid, as this action is, and none involved elements found in this case which affect the equities between the parties and make it inequitable to permit a recovery.

Upon the whole case, we are of the opinion that the City has no cause of action, and that the Court erred in instructing a verdict for it, and should have sustained the defendants' motions for a verdict and judgment.

The judgment is reversed and as it appears of record that appellants are entitled to final judgment in their favor, such judgment will be entered by this Court.

ROSS, J., concurs.