OPINION
U.S. Health Practices, Inc. ("U.S. Health"), plaintiff-appellant, appeals the August 10, 2000 judgment of the Franklin County Court of Common Pleas finding that Byron Blake, M.D., Inc. ("Dr. Blake"), defendant-appellee, was not unjustly enriched as a result of dealings between the parties.
Dr. Blake is a medical doctor who maintained a practice in Grove City, Ohio. In July 1996, Dr. Stephanie Flowers ("Dr. Flowers"), was employed with U.S. Health (now Ohio Health Practices) and commenced working in Dr. Blake's office through a Leased Physician Agreement ("agreement"). The agreement provided that U.S. Health would receive monthly compensation from Dr. Blake, totaling approximately $120,000 per year, and U.S. Health would provide the services of Dr. Flowers. Dr. Blake collected all fees from Dr. Flowers' services and was responsible for the day-to-day expenses of his office. Dr. Blake fell behind in his payments to U.S. Health, claiming that the agreement placed too large of a financial burden on his practice. The parties agreed to terminate the agreement in May 1997.
On May 1, 1997, both parties agreed that they would enter into a new agreement with terms different from the original agreement. During negotiations of the new agreement, Dr. Flowers continued to work in Dr. Blake's office. Dr. Blake continued to collect fees for the services Dr. Flowers rendered to patients, but did not pay any monies to Dr. Flowers or U.S. Health. Despite efforts to come to a new agreement through the evaluation of Dr. Blake's office billings and overhead costs, the parties reached an impasse by the end of 1997, and no agreement was ever entered into between the parties. Thus, on June 4, 1998, Dr. Flowers ceased employment with Dr. Blake's practice. From May 1997 to June 1998, Dr. Blake collected approximately $200,000 in fees as a result of Dr. Flowers' services. Based upon the agreement between U.S. Health and Dr. Flowers, U.S. Health paid Dr. Flowers $127,328 for work performed at Dr. Blake's office from May 1997 to June 1998.
On July 1, 1999, U.S. Health filed a complaint against Dr. Blake for unjust enrichment and quantum meruit. On July 12, 2000 and July 31, 2000, a bench trial was held. On August 1, 2000, the trial court rendered a decision, in which it found in favor of Dr. Blake. The decision was journalized on August 10, 2000. U.S. Health appeals the trial court's judgment, asserting the following assignment of error:
 THE TRIAL COURT ERRED IN FAILING TO GRANT JUDGMENT IN FAVOR OF PLAINTIFF U.S. HEALTH.
U.S. Health argues in its sole assignment of error that the trial court erred in failing to grant judgment in its favor. U.S. Health's argument is essentially that the trial court's determination was against the manifest weight of the evidence. Generally, an appellate court will not reverse a civil judgment as being against the manifest weight of the evidence if there is competent, credible evidence going to all of the essential elements of the case. See Chemical Bank of New York v. Neman
(1990), 52 Ohio St.3d 204. In determining whether a jury's verdict is contrary to the manifest weight of the evidence, an appellate court does, to a limited extent, weigh the evidence and consider the credibility of the witnesses in order to insure against a miscarriage of justice. Nilavar v. Osborn (Apr. 7, 2000), Clark App. No. 99-CA-53, unreported. However, it is well-settled that the resolution of conflicting testimony is largely a matter for the trier of fact. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.; see, also, Abram Tracy, Inc. v. Smith (1993),88 Ohio App.3d 253, 258.
U.S. Health's cause of action against Dr. Blake was based upon the theories of quantum meruit and unjust enrichment. Quantum meruit and unjust enrichment are doctrines derived from the natural law of equity, and the essential elements of recovery under both are the same. Loyer v.Loyer (Aug. 16, 1996), Huron App. No. H-95-068, unreported. To prove quantum meruit and unjust enrichment, a plaintiff must demonstrate: (1) a benefit conferred upon the defendant; and (2) the circumstances render it unjust to permit the defendant to retain the benefit without making payment therefor. National City Bank v. Fleming (1981), 2 Ohio App.3d 50;Rice v. Wheeling Dollar Savings Trust Co. (1951), 155 Ohio St. 391,397. The difference between quantum meruit and unjust enrichment is the manner in which damages are computed. Loyer, supra. For unjust enrichment, damages are conferred in the amount the defendant benefited.Id. For quantum meruit, damages are the measure of the value of the plaintiff's services, less any damages suffered by the other party. Id., citing National City Bank, supra, at 57; see, also, Hughes v.Oberholtzer (1954), 162 Ohio St. 330, 335; Abbruzzese v. Miller (Sept. 26, 1996), Franklin App. No. 96APE03-265, unreported.
In Gaier v. Midwestern Group (1991), 76 Ohio App.3d 334, 338, which the trial court and both parties cited, the court stated that a plaintiff seeking recovery under the theory of unjust enrichment must also prove that he has incurred a substantial detriment that is causally connected to a substantial benefit conferred on the defendant. See, also, Parahoov. Mancini (Apr. 14, 1998), Franklin App. No. 97APE08-1071, unreported, citing Gaier. Further, as we found in Katz v. Banning (1992),84 Ohio App.3d 543, 552, just because one party has been enriched through a transaction does not alone support a claim for unjust enrichment:
 * * * It is not sufficient for the plaintiff[s] to show that [they have] conferred a benefit upon the defendants. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendant[s] to retain the benefit. Id., quoting City of Cincinnati v. Fox (1943), 71 Ohio App. 233, 239.
In addition, it has been held that in assessing whether an unjust or unconscionable benefit has been received by a defendant, the court must consider whether the defendant was the party responsible for the plaintiff's detrimental position. See Mason v. Walter (Dec. 5, 1995), Hancock App. No. 5-95-20, unreported. Thus, the court in Mason found the concept of unjust enrichment includes not only loss by a plaintiff and benefit by a defendant, but that there must also be a tie of causation between them. Id.; see, also, Fairfield Ready Mix v. Walnut HillsAssociates, Ltd. (1988), 60 Ohio App.3d 1, paragraph four of the syllabus.
After considering all of the above principles and reviewing the evidence and testimony presented below, we find that the trial court's judgment was not against the manifest weight of the evidence. In determining an action based upon the theories of quantum meruit or unjust enrichment, we must first look at whether a benefit was conferred upon Dr. Blake. Undoubtedly, Dr. Blake did receive certain benefits from Dr. Flowers and U.S. Health. He received an additional doctor in his practice that could take on new patients and handle the overflow of his own patients without having to pay her a salary. Further, Dr. Blake was able to retain the fees from services performed by Dr. Flowers. We note that although U.S. Health tries to distinguish the benefit of fees collected and the benefit of not having to pay Dr. Flowers' salary, we find this distinction unnecessary. Neither party cites any case law indicating that when determining what "benefits" a defendant receives, a court must limit its consideration to only a certain type of benefit. A distinction between the two types of benefits would only be necessary when calculating the actual damages sustained pursuant to the specific theory of liability. See Loyer, supra. To distinguish and separate the benefits in the present case would be to ignore the totality of the circumstances and disregard the equitable considerations that a court is also required to contemplate. Thus, we find that Dr. Blake received both the benefit of Dr. Flowers' fee and the benefit of not having to pay her a salary.
However, the second element of a quantum meruit or unjust enrichment claim is whether the circumstances render it unjust to permit a defendant to retain the benefit without making payment therefor. National CityBank; Rice, supra. Under this element, we must look at the sum of circumstances, as well as the equities involved in the case. Although it may be said that Dr. Blake received some benefit from Dr. Flowers and U.S. Health, via fees and an increased capacity to treat patients without paying Dr. Flowers' salary, in looking at the total circumstances, competent, credible evidence was presented that the trial court could have found weighed against any net benefit for Dr. Blake. Dr. Blake testified that he did not gain or make any money from his association with U.S. Health, and, in fact, lost money approximately $50,000 as a result of the arrangement. It was within the discretion of the trial court to find Dr. Blake's testimony credible on this issue, as it was in the best position to view the witnesses. See Seasons Coal Co., supra.
In addition, Dr. Blake's and Dr. Flowers' testimony, as well as the exhibits, indicate that when Dr. Flowers left, she took approximately eight hundred patients from Dr. Blake's practice. Dr. Blake stated that Dr. Flowers had almost a fully developed practice by the time she left his office. Dr. Flowers testified she considered the practice she established while at Dr. Blake's practice to be "valuable." Dr. Don Gebhart, vice president of ambulatory services at U.S. Health, also viewed Dr. Flowers' growing client base "valuable" and an "investment." That U.S. Health believed Dr. Flowers' client base was, indeed, valuable, is further evidenced by the covenant not to compete clause contained in the employment agreement between U.S. Health and Dr. Flowers, which prohibited her from taking patients with her who were gained while under its employ. Thus, Dr. Blake's benefits were further offset by the diminution of his patient base.
Dr. Flowers also testified that Dr. Blake expended extra money to purchase some obstetrics equipment for her when she began practicing with him. She further stated that Dr. Blake had to hire a second medical assistant to assist her practice because his other long-time medical assistant could not handle the additional work load from Dr. Flowers. It was also undisputed that his assistants also handled her scheduling, insurance billing, referrals, and collections. Moreover, Dr. Gebhart testified that from May 1997 to June 1998, U.S. Health did not compensate Dr. Blake for Dr. Flowers' use of his office, medical equipment, furniture, medical supplies, and medical staff. Thus, there was competent, credible evidence that the trial court could have relied upon the indication that Dr. Blake's benefits were not unjust under the totality of the circumstances, given the expenses and losses he incurred in his dealings with U.S. Health and Dr. Flowers.
Pursuant to Gaier, the trial court also had to determine whether U.S. Health proved it incurred a substantial detriment that was causally connected to a substantial benefit conferred on Dr. Blake. Clearly, U.S. Health did incur a detriment in that it paid Dr. Flowers' salary for thirteen months while receiving no remuneration from Dr. Blake. However, in looking at the totality of the detriment, the trial court found that U.S. Health had not incurred a "substantial" detriment because of numerous benefits it received as a result of its relationship with Dr. Blake. We agree. First, Dr. Gebhart testified that one of the reasons Dr. Flowers had staff privileges at Grant Hospital was so that she could bring business to Grant Hospital, which was owned by U.S. Health, thereby "funneling" patients to its hospital for which it would in turn earn fees for services. Indeed, Dr. Flowers stated that while working at Dr. Blake's office, she referred patients to Grant Hospital. Second, Charles Moore, former president of the U.S. Health subsidiary Practice Advantage, testified that the purpose of attempting to keep Dr. Blake's practice in the U.S. Health system by providing Dr. Flowers' services was to maintain a "medical presence" in Grove City, which it lacked at that time. Third, U.S. Health benefited in that Dr. Flowers was a part of their integrated healthcare delivery network, which in turn aided their insurance business and carried out the goals of their network. Fourth, as previously mentioned, when Dr. Flowers left Dr. Blake's practice, eight hundred of Dr. Blake's patients transferred to Dr. Flowers' new office. Because she was still under contract with U.S. Health after she left Dr. Blake's practice, U.S. Health continued to profit indirectly from Dr. Blake's practice even after the parties separated.
Fifth, Dr. Gebhart testified that the original agreement between Dr. Blake and U.S. Health had a covenant not to compete clause stating that it could not open a competing practice within six months after termination of the agreement. However, after Dr. Flowers stopped working for Dr. Blake in June 1998, U.S. Health immediately opened a competing practice within a half-mile of Dr. Blake's office. By not having an agreement effective from May 1997 to June 1998, U.S. Health benefited by being able to fluidly maintain its presence in Grove City and immediately open a competing practice. Further, Dr. Gebhart agreed that the covenant not to compete clause was part of the value included in the $120,000 in payments Dr. Blake would have made to U.S. Health had the former agreement continued. Because U.S. Health opened a competing practice, Dr. Blake was deprived of the benefit of the non-compete clause that would have constituted a portion of the $120,000 that U.S. Health prayed for in this action. Therefore, the trial court's finding that U.S. Health received numerous benefits as a result of its relationship with Dr. Blake, thereby minimizing any detriment it may have suffered, did not constitute a "miscarriage of justice."
In addition, the trial court was required to consider whether U.S. Health had a superior equity, rendering Dr. Blake's actions unconscionable. We find that the trial court did not err in its weighing of the respective equities in this case. First, U.S. Health could have removed Dr. Flowers from Dr. Blake's practice at any time after May 1997. Dr. Gebhart testified that pursuant to the employment agreement with Dr. Flowers, U.S. Health could have terminated its employment of Dr. Flowers at any time from May 1997 to June 1998 if it believed the relationship was not beneficial to it, which it failed to do. He also stated that because there was no effective agreement with Dr. Blake during this period, it could have removed Dr. Flowers from Dr. Blake's office, but it did not. Although Dr. Gebhart testified that U.S. Health did not pull Dr. Flowers from Dr. Blake's practice after May 1997 because it did not want to "disrupt" Dr. Blake's office, we do not find this a compelling reason. It is irreconcilable that U.S. Health would find any perceived disruption unacceptable in May 1997 but then suddenly acceptable in June 1998. Further, contrary to U.S. Health's claim that it did not want to disrupt Dr. Blake's practice, we find persuasive Dr. Blake's testimony that he had successfully managed his practice for forty years without Dr. Flowers' help, and that he could have continued without her. Dr. Blake also testified that he never requested from U.S. Health that Dr. Flowers stay at his office until a new agreement could be worked out. There was also evidence that Dr. Blake had hired several other doctors in the recent past to help in his practice, and there was no reason why he could not have again entered into such an arrangement had U.S. Health decided to remove Dr. Flowers from his practice after May 1997.
Second, as the trial court found, there was considerable evidence that Dr. Blake made several attempts to spur U.S. Health to come to a resolution, yet U.S. Health did not respond and, in fact, wholly failed to address the issue for an extensive period of time. Dr. Blake testified that he spoke with Mr. Moore in mid-August 1997, and Mr. Moore said he would send him a new proposal, but never did. Dr. Blake stated that he called Mr. Moore again in September and was puzzled because Mr. Moore did not recall ever speaking with him in August. After finally receiving a letter with a new proposal from Mr. Moore in November, in which it was suggested that Dr. Flowers take on an independent practitioner status and that U.S. Health make payments to Dr. Blake, Dr. Blake then sent Mr. Moore a return letter stating that he would agree to his proposal regarding Dr. Flowers' independent status. However, Dr. Blake testified that he never heard back from anyone at U.S. Health again. Mr. Moore testified that he never spoke to Dr. Blake again and passed Dr. Blake's letter on to his superiors before permanently leaving U.S. Health in December 1997. There was no evidence that anyone associated with U.S. Health ever contacted Dr. Blake after this point. In fact, Dr. Blake testified he was never informed by anyone at U.S. Health that Dr. Flowers would be leaving his practice in June 1998 until Dr. Flowers told him. Thus, this evidence and testimony supported the trial court's finding that equity considerations would favor Dr. Blake, given that he should not be required to pay for something he did not request and attempted to remedy.
Additionally, the above testimony also provides competent, credible evidence that Dr. Blake was not the party responsible for U.S. Health's detrimental position and that U.S. Health was, in fact, largely responsible for its own detriment, thereby breaking any causal connection. See Mason; Fairfield Ready Mix, supra. Thus, the trial court had competent, credible evidence upon which to base its determination that the equitable considerations in this case favored Dr. Blake.
Therefore, there was competent, credible evidence that U.S. Health failed to demonstrate that it incurred a substantial detriment caused by Dr. Blake, that it had superior equity, and that Dr. Blake received a benefit that under the totality of the circumstances rendered it unjust to permit him to retain such benefit. The trial court's judgment was not against the manifest weight of the evidence, and U.S. Health's assignment of error is overruled.
Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Common Pleas Court is affirmed.
 ___________________ BROWN, J.
PETREE and BOWMAN, JJ., concur.